# Exhibit A



ALESSANDRA SOLER
EXECUTIVE DIRECTOR

DALE BAICH
PRESIDENT

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION
OF ARIZONA
P.O. BOX 17148
PHOENIX, AZ 85011-0148
P/602.650.1854
F/602.650.1376
WWW.ACLUAZ.ORG

**Via Certified Mail**

September 24, 2018

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Email: ICE-FOIA@dhs.gov

    *Re:*    *Freedom of Information Act Request*

To Whom It May Concern:

    This is a request for records ("Request") made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and the relevant Department of Homeland Security implementing regulations, 6 C.F.R. § 5.1, *et seq*. This Request is submitted by the American Civil Liberties Union of Arizona ("ACLU of Arizona").

    The ACLU of Arizona seeks the disclosure of records related to ICE's Law Enforcement Support Center ("LESC"), which provides immigration status, identity information, and real-time assistance to local, state, and federal law-enforcement agencies on aliens suspected, arrested, or convicted of criminal activity. The LESC regularly responds to inquiries submitted by local law-enforcement officers throughout the nation who believe that they may have detained or apprehended a deportable alien. The ACLU of Arizona seeks the requested records to aid the public in better understanding the relationship between ICE's LESC and local police departments in Arizona and throughout the country, and to shed light on how inquiries submitted by local law enforcement are processed by the LESC.

## **REQUESTER**

    The ACLU of Arizona is a statewide nonpartisan, nonprofit organization of over 22,000 members throughout Arizona dedicated to protecting the constitutional rights of all, including the rights of all persons during interactions with law enforcement. The ACLU of Arizona is the Arizona state affiliate of the American Civil Liberties Union ("ACLU"), the largest nonprofit civil liberties organization in the United States, with over one million members. The ACLU of Arizona and its sister organization, the American Civil Liberties Union Foundation of Arizona ("ACLU Foundation of Arizona"), work daily in courts, the state legislature, and local Arizona communities to

1

defend and preserve the individual rights that the Constitution and laws of the United States guarantee to everyone in this country.[1]

The ACLU of Arizona publishes newsletters, news briefings, know-your-rights pamphlets, and other educational materials that are available to the public free of charge. The ACLU of Arizona disseminates these materials through its websites, including www.acluaz.org and smartjusticeaz.org. These websites address civil-liberties issues in depth, provide features on civil-liberties issues in the news, and contain hundreds of documents that relate to issues addressed by the ACLU and the ACLU of Arizona, including documents obtained through FOIA and state public records requests. For example, in October 2015 the ACLU of Arizona released a report drawn from first-hand accounts and public records obtained through FOIA, detailing a pattern of constitutional violations by the U.S. Border Patrol at interior immigration checkpoints.[2] Earlier this year, the ACLU of Arizona and partner organizations released a report, drawn from 30,000 pages of government documents obtained through FOIA, bringing to light the systemic abuse and neglect of immigrant children detained by U.S. Customs and Border Protection.[3]

The ACLU of Arizona qualifies as a "representative of the news media" because it regularly "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 522(a)(4)(A)(ii); 6 C.F.R. § 5.11(b)(6); *see also Nat'l Security Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that "gathers information from a variety of sources," exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF ARIZONA

---

[1] The ACLU of Arizona is a nonprofit, 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators. The ACLU Foundation of Arizona is a separate 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about the civil rights and civil liberties implications of pending and proposed state and federal legislation, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators. The ACLU of Arizona and ACLU Foundation of Arizona often publish publicly available reports about matters of public concern.

[2] Record of Abuse: Lawlessness and Impunity in Border Patrol's Interior Enforcement Operations, https://www.acluaz.org/en/record-abuse;

[3] ACLU Obtains Documents Showing Widespread Abuse of Child Immigrants in U.S. Custody, https://www.aclu.org/news/aclu-obtains-documents-showing-widespread-abuse-child-immigrants-us-custody

2

purposes of FOIA). Courts have found both the ACLU and other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU to be "representatives of the news media." *See, e.g.*, *ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004); *Elec. Privacy Info. Center v. Dep't of Defense*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003); *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000).

## DEFINITIONS

"Records" – All records or communications preserved in electronic or written form, including but not limited to: agreements; correspondence; documents; letters; notes; messages; e-mails; faxes; data; videotapes; audio tapes; spreadsheets; files; forms; logs; records; guidance; guidelines; evaluations; audits; investigations; reviews; studies; reports; critiques; analysis; internal memoranda; legal opinions; orders; guidance; directives; training materials; criteria; standards; specifications; rules; instructions; manuals; advisories; protocols; procedures; policies; or other communications.

"LESC" – The Law Enforcement Support Center, the sub-agency of U.S. Immigration and Customs Enforcement ("ICE"), located in Vermont, that operates 24 hours a day, 7 days a week, 365 days a year, and serves as the single national point of contact to provide timely immigration status, identity information, and real-time assistance to local, state, and federal law enforcement agencies on aliens suspected, arrested, or convicted of criminal activity.

## RECORDS REQUESTED

The ACLU of Arizona seeks disclosure of the following categories of Records held by ICE, relating to the functions and operations of ICE's LESC:

1. Any and all training materials developed by, administered by, promulgated by, revised by, reviewed by, and/or distributed by LESC's Training Section from January 1, 2010, to the present. This request includes, but is not limited to, the following categories of documents:

    a. Any and all materials designed for ICE's "Virtual University";

    b. Any and all materials comprising the Basic Law Enforcement Specialist Training ("BLEST");

    c. Any and all materials that comprise mandatory training for Law Enforcement Specialists employed within LESC's offices in Williston, Vermont;

    d. Any and all materials explaining and/or teaching the appropriate search protocol for Law Enforcement Specialists to follow when responding to an Immigration Alien Query

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF ARIZONA

3

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION
OF ARIZONA

      ("IAQ") and/or when creating an Immigration Alien Response ("IAR");

    e. Any and all materials related to proper use of the National Law Enforcement Telecommunications System ("NLETS") (also referred to at times as the "International Justice and Public Safety Information Sharing Network");

    f. Any and all exams, quizzes, and/or tests administered in conjunction with any training materials responsive to this request;

    g. Any and all PowerPoint presentations, written training materials, online training materials, and/or written outlines related to the above-listed topics.

2. Any and all rules, directives, procedures, protocols, training materials, guidelines, standing orders, and/or standard operating procedures ("SOPs") relating to the manner in which an IAQ is to be prioritized for processing by a Law Enforcement Specialist and/or how an IAQ is to be assigned to a specific queue. This request includes, but is not limited to, documents relating to how a Law Enforcement Specialist determines which incoming IAQs are to be processed first, and under which circumstances a Law Enforcement Specialist is supposed to process a later-received IAQ ahead of an earlier-received IAQ.

3. Any and all rules, directives, procedures, protocols, guidelines, training materials, standing orders, and/or SOPs that apply to Law Enforcement Specialists in their work responding to IAQs. This request includes, but is not limited to, documents relating to the Law Enforcement Specialists' proper use of the following database systems, information sharing platforms, information repositories, and search tools:

    a. U.S. Citizenship and Immigration Services's ("USCIS") system known as the Central Index System ("CIS");

    b. ICE's ENFORCE Alien Removal Module;

    c. ICE's ENFORCE Alien Detention Module;

    d. CBP's TECS system (sometimes referred to as "Treasury Enforcement Communications System" or "Primary and Secondary Processing");

    e. Department of Homeland Security's ("DHS") Automated Biometric Identification System ("IDENT");

    f. Federal Bureau of Investigation's ("FBI") Integrated Automated Fingerprint Identification System ("IAFIS");

    g. ICE's Enforcement Integrated Database ("EID");

4

AMERICAN CIVIL
LIBERTIES UNION FOUNDATION
OF ARIZONA

    h. USCIS's Computer-Linked Application Information Management System ("CLAIMS 4");

    i. DHS's Student and Exchange Visitor Information System ("SEVIS");

    j. USCIS's Reengineered Naturalization Application Casework System ("RNACS");

    k. LESC's ACRON system;

    l. U.S. State Department's Consular Consolidated Database ("CCD" or "CCDI");

    m. DHS and USCIS's Person Centric Query System ("PCQS");

    n. The NCIC Immigration Violator File;

    o. Any of the additional 20 files of NCIC to which LESC has access, in addition to the Immigration Violator File;

    p. LESC's Alien Criminal Response Information Management System (ACRIMe);

    q. ICE's Integrated Decision Support;

    r. Interpol database of "blue notices" (i.e., international warrants).

4. From January 1, 2010, to the present, manipulable and sortable data in Excel, .csv, or similar format derived from the Alien Criminal Response Information Management System ("ACRIMe"), and showing information related to every Immigration Alien Response ("IAR") generated by Law Enforcement Specialists employed by the LESC in Williston, Vermont, and transmitted via the NLETS system to any state or local law enforcement agency in response to the state or local law enforcement agency's biographic query (IAQ). To clarify, this request seeks data derived from all IARs generated by LESC within the relevant time period in response to a biographic – as opposed to biometric – query submitted to LESC by a state or local law enforcement agency. This request includes, but is not limited to, the following "fields" – or categories – of information found within the ACRIMe system for each IAR generated within the system during the relevant time period:

    a. Name of the requesting law enforcement agency;

    b. City/state of the requesting law enforcement agency;

    c. Date and time that the IAQ was received by LESC;

    d. Date and time that the IAR was transmitted via NLETS to the requesting law enforcement agency;

    e. Outcome of the IAR;

5

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF ARIZONA

    f. Name of the alien or suspected alien who was the subject of the IAQ;

    g. Whether an ICE detainer was issued as a result of the IAR;

    h. Date of detainer issued (if detainer was issued)

    i. Name and address of law enforcement agency detainer was addressed to (if detainer was issued).

    j. Length of time that the IAQ was sitting in the queue before a Law Enforcement Specialist initiated work on the query;

    k. Whether the IAQ was deemed by LESC to be a time-sensitive query (such as a traffic stop).

5. A "dictionary" or other similar document sufficient to allow the ACLU of Arizona to understand any codes or acronyms used in the document produced in response to Request No. 4, above.

6. Any screen shot, training material, user's manual, or other document sufficient to allow the ACLU of Arizona to understand every data field that exists within the ACRIMe database, as it is currently used. This request does not seek populated fields of data, but rather seeks the architecture of the ACRIMe system, sufficient to allow the ACLU of Arizona to understand the total universe of fields and/or categories of information that a Law Enforcement Specialist employed within the LESC may choose to record in the system when preparing and transmitting an IAR. This request seeks information pertaining to all categories of fields in ACRIMe, regardless of whether the actual data points were requested elsewhere in this FOIA request.

If any records responsive or potentially responsive to the Request have been destroyed, this Request includes, but is not limited to, any and all records relating to or referring to the destruction of those records. This includes, but is not limited to, any and all records relating or referring to the events leading to the destruction of those records.

### REQUEST FOR A WAIVER OR LIMITATION OF SEARCH AND REVIEW FEES

The ACLU of Arizona seeks a waiver of processing (search and review) fees because disclosure of these records is in the public interest and not in the ACLU of Arizona's commercial interest, and because the ACLU of Arizona qualifies as a "representative of the news media." *See* 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.").

6

6 C.F.R. § 5.11(d)(1) (search fees shall not be charged "for requests by educational institutions . . . or representatives of the news media"). As discussed below, federal agencies routinely grant such fee waivers for FOIA requests made by the ACLU and its state affiliates, like the ACLU of Arizona, for these reasons.

At a minimum, should a total fee waiver be denied, "fees should be limited to reasonable standard charges for document duplication" because the ACLU of Arizona is a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

The records requested will contribute significantly to public understanding of the government's operations or activities. Under 6 C.F.R. § 5.11(k)(2), the following factors are to be considered in determining whether a disclosure is in the public interest: (i) whether the subject of the requested records concerns "the operations or activities of the government"; (ii) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; (iii) whether disclosure of the requested information will contribute to "the understanding of a reasonably broad audience of persons interested in the subject"; and (iv) whether disclosure is likely to contribute "significantly" to public understanding of government operations or activities. *See* 6 C.F.R. § 5.11(k)(2)(i)-(iv). Each of these considerations is satisfied here.

First, the records requested pertain directly to the operations and activities of the federal government (specifically, ICE and one of its subcomponents, LESC).

Second, this request is "likely to contribute" to an understanding of government operations or activities, specifically by helping the public to better understand the relationship between its local law enforcement agencies and the federal agency tasked with enforcing immigration laws within the interior portions of the United States.  In particular, this request is tailored to allow the public to better understand what transpires when a local law enforcement officer contacts LESC to assist in determining an individual's federal immigration status.

Third, disclosure of the requested information will contribute to "the understanding of a reasonably broad audience of persons interested in the subject" of how local law enforcement officers interact with LESC when detaining, stopping, or arresting an individual suspected of being unlawfully present in the United States. Among other things, the ACLU of Arizona intends to share responsive documents with the general public and to analyze specific documents to raise public awareness of this unique form of interaction between local and federal law enforcement.

Finally, disclosure will contribute "significantly" to the public understanding of both ICE and its subcomponent LESC.  The question of how local law enforcement interacts with federal immigration enforcement agencies

7

has garnered significant public and media attention in recent years, yet much remains unknown about this topic.

Disclosure of the information requested is not in the ACLU of Arizona's commercial interest and the ACLU of Arizona is not acting on behalf of any party. The ACLU of Arizona is a nonprofit organization and any information obtained as a result of this Request will be made available to the public at no cost. Additionally, as described in detail above, the ACLU of Arizona meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(II).

For the foregoing reasons, a fee waiver or limitation should be granted. A fee waiver would also fulfill Congress's legislative intent in amending FOIA, namely to ensure that the Act is liberally construed in favor of granting waivers for noncommercial requesters and to effectuate disclosure of documents of public importance. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters.") (internal quotation marks and citation omitted); OPEN Government Act of 2007, Pub. L. No. 110-175; 121 Stat. 2524 (finding that "disclosure, not secrecy, is the dominant objective of the Act," quoting *Department of Air Force v. Rose*, 425 U.S. 352, 361 (1992)).

Should a total waiver be denied, fees should be "limited to reasonable standard charges for document duplication." 5 U.S.C. § 552(a)(4)(A)(ii)(II). In the event a fee waiver or reduction of costs is denied, please notify us in advance if the anticipated costs associated with this request exceed $300.00.

****

We further expect your reply to the Request itself within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(i). If the Request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to FOIA. We also ask that you release all segregable portions of otherwise exempt material.

Please furnish all responsive records to Gloria Torres by email at gtorres@acluaz.org or by physical delivery at: 3707 North 7th Street, Suite 235, Phoenix, AZ 85014. Should you need to communicate with us regarding this request, please contact us by email at the addresses above or my phone at: 520-256-5387.

Sincerely,

*Billy Peard*

Billy Peard
Staff Attorney, ACLU of Arizona

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF ARIZONA

8